RECEIVED

AUG 2 3 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DOROTHY A. DUNLAVEY, ET AL                      6:12-CV-1162

VERSUS                                          JUDGE DOHERTY

TAKEDA PHARMACEUTICALS                          MAGISTRATE JUDGE HANNA
AMERICA, INC.

AND

JOSEPH VASSALOTTI                               6:12-CV-1165

VERSUS                                          JUDGE DOHERTY

TAKEDA PHARMACEUTICALS                          MAGISTRATE JUDGE HANNA
AMERICA, INC.

## MEMORANDUM RESPONSE

In correspondence to this Court dated July 27, 2012, Plaintiffs' attorneys Michael J. Miller and Turner Branch alleged improper and unethical conduct by this Court and, by inference, by the Honorable Judge Sarah Singleton, in this Court's reaching out to explore coordination with state courts in the matter *In Re: Actos (Pioglitazone) Products Liability Litigation*, a Multidistrict Litigation ("MDL") consolidated action.[1] This Court will assume that the writers did not intend to convey their concerns in the manner the correspondence suggests, however, the correspondence, on its face, cannot be left unaddressed, consequently, this Court has prepared the following formal response:

By way of background, it should be noted a Multidistrict Litigation, such as *In Re: Actos (Pioglitazone) Products Liability Litigation*, is comprised of multiple cases from multiple jurisdictions assigned to one federal judge to oversee all consolidated pretrial matters.   The *Manual for Complex Litigation, Fourth* (2004) ("the Manual") published by the Federal Judicial

---

[1] Correspondence from Michael J. Miller and Turner Branch to Hon. Rebecca F. Doherty dated July 27, 2012 ("Writers' Letter").

Center offers federal judges suggestions on how to handle mass torts and class actions.[2] Although it is not, and should not, be cited as authoritative legal or administrative policy,[3] it does provide valuable recommendations by the authors who have successfully overseen mass tort litigation.  This Court, as well as others, often look to the Manual as a guidepost in crafting procedures that will aid all parties involved in both the progression and adjudication of complex cases such as *In Re: Actos (Pioglitazone) Products Liability Litigation.*

Often in complex cases, as in this case, cases are filed in many courts, both state and federal.  Federal cases filed in multiple jurisdictions often involve one or more common questions of fact.  Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("the Panel") is authorized by Congress to transfer actions to any district for coordinated or consolidated pretrial proceedings "when civil actions involving one or more common questions of fact are pending in different districts."[4]  It is without question, **judges are advised to coordinate and cooperate in such cases.**[5]

When approaching state court judges, this Court, or any federal court, should approach with the principle of comity in mind, as indeed this Court has.  Indeed, when a federal court has reached out to and reaches out to a state court, it must bear in mind the principle of comity as noted by the Supreme Court:

---

[2] MANUAL FOR COMPLEX LITIGATION (Fourth) (2004).

[3] MANUAL FOR COMPLEX LITIGATION (Fourth) *Introduction* (2004).

[4] "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: *Provided, however*, That the panel may separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a) (emphasis original).

[5] MANUAL FOR COMPLEX LITIGATION (Fourth) §§ 20.3, 22.4 (2004); *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges*, § 3.4 (1995).

> a proper respect for state functions, recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways.

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 102 S. Ct. 177, 70 L. Ed. 2d 271 (1981) (quoting *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

It is with comity in mind that this Court has sent correspondence to judges once known to this Court as having "Actos" cases in his or her court, asking if he or she "might wish to explore whether it might be of benefit to talk about the status of our respective cases and the possibility or desirability of coordinating some of our efforts in hopes of avoiding duplication of effort, costs and, perhaps, inconsistent rulings by the different courts."[6]

As stated before, a transferee judge—the judge to whom all federal cases are transferred—is provided insight on how to best manage and handle an MDL, not only by the *Manual for Complex Litigation, Fourth* (2004), but also by multiple publications published by the Federal Judicial Center (collectively "Manuals").[7]   Because there is no comprehensive statutory scheme defining the handling of a mass tort or MDL, both state and federal judges often rely on these informative materials to construct creative and innovative efforts in managing cases such as an MDL.[8]   Largely the guidance advises a transferee judge to "coordinate parallel or related litigation so as to reduce costs, delays, and [the] duplication of effort" that readily

---

[6] Letter to Honorable [Judge]; Foundational correspondence sent by this Court, a copy of which is attached hereto as Exhibit "A" ("Letter to State Court Judges").

[7] MANUAL FOR COMPLEX LITIGATION (Fourth) (2004); TEN STEPS TO BETTER CASE MANAGEMENT: A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES (2009); MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES (2011); MANUAL FOR COOPERATION BETWEEN STATE AND FEDERAL COURTS (1997).

[8] MANUAL FOR COOPERATION BETWEEN STATE AND FEDERAL COURTS PP. 15-16 (1997); *see also* MANUAL FOR COMPLEX LITIGATION (Fourth) §20.31 (2004).

3

occurs in cases that are dispersed over multiple jurisdictions.[9]  **Cooperation between state and federal judges is not only advised, it is advised often.**[10]

Not only do those guiding materials for federal courts advise cooperation and interaction within the state courts, the *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges* ("the State Manual"), published by The Mass Tort Litigation Committee of the Conference of Chief Justices,[11] also advises interaction between state and federal courts in the mass tort, MDL setting, thus, state courts are also advised and encouraged to interact with their federal counterparts.[12]  Historically, coordination by and among both federal and the multiple state courts is common in MDL and mass tort litigation as is evidenced by the plethora of cases where coordination has been utilized.[13]  Academics have studied both the advantages and disadvantages of coordination, which aspects benefit most from coordination, and which do not.[14]  Coordination, cooperation, discussion and interaction between and among the federal

---

[9] *Id.*

[10] *See* MANUAL FOR COMPLEX LITIGATION (Fourth) §§20.31, 22.4 (2004); TEN STEPS TO BETTER CASE MANAGEMENT: A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES §VII (2009); MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES §6 (2011); MANUAL FOR COOPERATION BETWEEN STATE AND FEDERAL COURTS (1997); RESOURCE BOOK ON MANAGING MASS TORT CASES §3.4 (1994).

[11] Alexander B. Aikman, *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges* (1995).

[12] "If the federal cases already have been assigned to a coordinating judge . . . you should contact the judge to advise him or her that you are handling some of these cases and to learn what coordination is underway and possible." *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges,* § 3.4 (1995).

[13] *See e.g., In re Aircrash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1009 (5th Cir. 1977); *Coburn v. 4-R Corp.*, 77 F.R.D. 43 (E.D. Ky. 1977); *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 476 F.Supp. 445 (J.P.M.L. 1979); *In re Fed. Skywalk Cases*, 93 F.R.D. 415 (W.D. Mo.), *vacated*, 680 F.2d 1175 (8th Cir.), *cert. denied*, 459 U.S. 988 (1982); *In re Ohio Asbestos Litig.*, No. 83-OAL (N.D. Ohio June 1, 1983); *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 917 (D. Nev. 1983); *In re Technical Equities Fed. Sec. Litig.*, [1988-1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) 94,093 (N.D. Cal. 1988); *In re L'Ambiance Plaza Litig.*, No. B-87-290 (WWE) (D. Conn. & Conn. Super. Ct. Dec. 1, 1988) (Special Settlement Proceedings).

[14] *See e.g.,* William W. Schwarzer, *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 VA. L. REV. 1689 (1992);  Francis E. McGovern, *Rethinking Cooperation Among Judges in Mass Tort Litigation*, 44 UCLA L. REV. 1851 (1997);  William W. Schwarzer et. al., *Judicial Federalism: A Proposal to Amend the Multidistrict Litigation Statute to Permit Discovery Coordination of Large-Scale Litigation Pending in State and Federal Courts*, 73 Tex. L. Rev. 1529 (1995);  Joseph F. Rice & Nancy Worth Davis, *Judicial Innovation in Asbestos Mass Tort Litigation*, 33 Tort & Ins. L.J. 127, 132 (1997).

courts and the state courts is not a novel thing; it is not improper; rather, it is advised, encouraged and welcomed by both the federal and state courts.[15]

The Manual in §§ 20.3 and 22.4 specifically addresses both related state and federal cases and multiple filings in state and federal courts, as does the State Manual at § 3.4.[16]  It is wholly without question this court does not have jurisdiction over state court cases, nor has it, nor will it, attempt to in any way, exercise improper jurisdiction over state courts and the cases within those courts.  However, as the federal judge tasked with managing this behemoth litigation, history, guidance, comity and necessity have proven it is desirable for fairness to all parties and in promotion of equitable and efficient resolution, that this court reach out to the other judges who, also, have cases in their courts, in order to discuss possible coordination, mutual concerns, and suggestions, and to offer exchange of relevant orders and information.  Section 20.3 of the Manual points out that, "there is no procedural mechanism analogous to the Multidistrict Litigation Panel's transfer under section 1407 for formal coordination or consolidation of state and federal cases;"[17] as a direct result, a transferee judge can craft an approach for coordination.[18]  The Manual recommends that **"it is best to communicate with state and judicial counterparts at an early stage to begin coordinating such cases."**[19]  In fact, the Manual addresses coordination by recommending that **"[f]ederal judges should communicate personally with state court judges who have a significant number of cases in order to discuss mutual concerns and suggestions..."**[20]  The Manual further provides examples of

---

[15] *See supra* notes 10-11 and accompanying text.
[16] MANUAL FOR COMPLEX LITIGATION (Fourth) §§20.3, 22.4 (2004), *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges*, § 3.4 (1995).
[17] MANUAL FOR COMPLEX LITIGATION (Fourth) §20.3 (2004).
[18] MANUAL FOR COMPLEX LITIGATION (Fourth) §20.311 (2004).
[19] *Id.*
[20] MANUAL FOR COMPLEX LITIGATION (Fourth) §20.312 (2004).

5

coordination undertaken in other mass tort actions, including the coordination of "aggregation and consolidation decisions", "pretrial motions and hearings", "pretrial discovery", "settlement" and "trial."[21]

Additionally, as noted, *Managing Mass Tort Cases: A Resource Book for* **State** *Trial* *Court Judges* **recommends state court judges coordinate with federal judges in mass tort cases.**[22]   Section 3.4 titled, **"Coordinating with the Federal Courts" notes that "[c]oordination between state and federal courts has proven to be highly advantageous to the courts in [a number of mass torts cases]".**[23]   The State Manual goes as far as to note, **"[i]f the federal cases already have been assigned to a coordinating judge, whether of [sic] not he or she is in your jurisdiction you should contact the judge to advise him or her that you are handling some of these cases and *to learn what coordination is underway and possible.*"**[24] (emphasis added)   Indeed, the **State Manual**, also, recommends coordination of pretrial proceedings and approaches it from the perspective of benefit to the state court.[25]

Furthermore, the Panel and the Center have published a specific guide on point entitled, *Ten Steps to Better Case Management: A Guide for MDL Transferee Judges* ("Ten Steps").[26] Found within Ten Steps is Section VII - "Coordinate with Parallel State Court Cases" encouraging MDL transferee judges to "[t]ake it upon yourself to reach out to your state court colleagues from the outset... [and] forge constructive working relationships with them."[27]

---

[21] MANUAL FOR COMPLEX LITIGATION (Fourth) §20.313(2004).
[22] *See supra* note 11.
[23] *Id.* at 30.
[24] *Id.* at 31.
[25] *Id.* at 30-31. (recommending that the state court judge "should contact your local district court judge to discuss coordination even if there are efforts underway to appoint a federal coordinating judge for the federal cases").
[26] TEN STEPS TO BETTER CASE MANAGEMENT: A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES (2009).
[27] *Id.* at §VII.

6

Indeed, much of the Center's published material suggests and recommends that federal MDL transferee judges coordinate with state court judges.[28]   Further, *Managing Multidistrict Litigation in Products Liability Cases*, part 6 titled "Coordination with Related State Cases" recommends transferee judges "reach out to your state court colleagues from the outset to forge constructive working relationships with them."[29]   Highlighting the Panel's guidance are examples of coordination from prior MDL cases noting the extensive historical jurisprudential precedent for the recommended discussion of mutual concerns and suggestions and interaction between and among courts.   Specifically, the informal practices noted include: personal meetings, telephone calls, and email communications *to exchange information about scheduling and to coordinate discovery and other procedural matters*.   Judges should, at the very least, "exchange case-management orders, master pleadings, questionnaires, and discovery protocols."[30]

Consequently, it is abundantly clear and without question, interaction between and among the federal court and the multiple state courts is not only not improper in any fashion, but welcomed and encouraged by both courts.

<u>Mr.  Miller and Mr. Branch's Letter</u>

This Court has, as noted, received correspondence attempting to characterize this Court's actions designed to promote comity and respect between the federal court tasked with guiding the "Actos" MDL though its pretrial progress and those state courts which have "Actos" cases, also, in their court, as improper.   To support the completely specious argument, the writers' correspondence argues there has been "interference," when there has been none; a disregard for

---

[28] *See supra* note 7.
[29] Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges 22 (2011).
[30] *Id.* at 25.

comity when comity has been promoted and respected; a violation of the Anti-injunction Act –
when there has been no injunction; "ex parte" conversations by Judge Singleton when there can
have been none as no party was involved in the matter; failure of this Court to accord to the
writers "full right to be heard according to the law" – when full opportunity has been granted to
all counsel, including the writers, by this Court's applicable scheduling and case management
order(s);[31] improper use of the Temporary Restraining Order - when there has been none; and
improper attempts to interfere with a lawful ongoing state investigation - when there has been no
such investigation or interference.  As a whole, the correspondence of July 27, 2012 is gravely
troubling in every respect.  The Court will now address, in detail, the unsupported allegations
contained in the noted correspondence.

The writers' correspondence attempts, without support of any nature, to characterize the
Court's efforts to promote comity, as conduct which is inapposite to the promotion of comity.  In
the spirit of comity, this Court has reached out to the state courts to offer to cooperate and
coordinate; it is entirely up to the state court judges whether they wish and the manner and
extent, if any, to which they might wish to cooperate or coordinate with the MDL.  The writers'
correspondence characterizes this Court's action as "*intervention*," particularly in "the above-
referenced Actos tort case presently pending in New Mexico state court...." (emphasis added)[32]
and cites only cases involving injunctions, temporary restraining orders and other inapplicable
factual scenarios to support this unfound allegation.  First, the writers' correspondence provides

---

[31]The check in sheets for each of the monthly status conferences notes Mr. Miller has been a participant by phone,
but did not attend the initial status conference; Mr. Branch does not appear as a participant at any of the monthly
status conferences, including the initial status conference, however, a member of Mr. Branch's firm was present at
the initial status conference and two other members of that firm are listed as having participated in only the May
status conference; a complete and quite extensive process has been established for counsel who wish to be heard by
the Court. *See:* Minute Entry: Communicating With the Court, April 13, 2012 (MDL Doc. No. 562); Minute Entry:
Status Conferences, April 13, 2012 (MDL Doc. No. 563).
[32] Correspondence from the writers to Hon. Rebecca F. Doherty dated July 27, 2012 ("Writers' Letter"); Writers'
Letter at 1.

no evidence or support for his accusation that this Court engaged in "intervention" – it cannot, as there exists none; this Court did not *intervene* in any state court proceeding in any fashion.  This Court has reached out and continues to reach out to state courts as they come to this Court's attention and as this Court has the time and opportunity to explore whether coordination and cooperation is welcomed and/or warranted as is reflected by this Court's initial correspondence which sets the tone and perimeter for the Court's interaction.[33]  To categorize this Court's efforts to promote comity as "intervention" in contravention of comity is grossly inaccurate and wholly specious.   Second, notwithstanding the writers' correspondence's suggestion otherwise, this Court did not select the New Mexico court or any court where the writers might have cases, for particular contact, rather this Court has been and continues to reach out to all state courts who have "Actos" cases in turn as they become known to this Court and this Court has time and opportunity.  Correspondence was sent to all known courts in early July with follow up calls made thereafter and the process continues as state courts become known to this Court, save for Chicago, which was known to this Court from the outset.

The writers' correspondence cites no evidence of any type of "intervention," rather cites cases concerning federal action which is not, in any way, present or at issue.  The cases cited deal with injunctions, temporary restraining orders, and impeding a legitimate state investigation – none of which are present or at issue in this matter.[34]  Again, this Court notes that not only did the writers' correspondence cite no evidence of "interference," in this case, the cases cited reference actions not present, nor at issue, in this matter.  Thus, the argument misstates the facts, mischaracterizes the law and is, on its face, specious.  The writers' correspondence specifically

---

[33] *See supra* note 6 (Letter to State Court Judges).
[34] *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984); *U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170, 1175 (3d Cir. 1989); *Atl. Coast Line R.R. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

cites *Younger v. Harris*, where *an injunction* issued by a federal court *to restrain a district attorney from criminally prosecuting Harris* was at issue - there is no injunction at issue here in any fashion whatsoever.[35] In *DeSpain v. Johnston*, also cited as support by the writers' correspondence, the Fifth Circuit held the district court should have abstained in the first instance *from issuing a temporary restraining order* while state court proceedings were pending – there is no temporary restraining order present or at issue here in any fashion whatsoever.[36] In the case cited by the writers' correspondence, the practical effect of the federal action in that case was the "district court's action effectively halted a legitimate state investigation into an allegation of child abuse and enjoined a pending state court proceeding in contravention of the *Younger* doctrine"[37] – there is no state investigation involved of any nature, and no injunction present or, in any way, at play. Thus, the argument both legal and factual within the correspondence, is specious as it is wholly without support, factually or legally, and it would seem, a deliberate attempt to mischaracterize both the facts and the law in an effort to create and support a totally false premise. Again, the writers' correspondence cites no factual basis or evidence, whatsoever, to suggest any such action was contemplated by this Court in the manner they argue – because, clearly, it was not – therefore, for argument to infer facts not present or at issue and to cite as support inapplicable case law, is a gross distortion of proper argument and suggests deliberate, and false, mischaracterization in violation of one's obligation as an officer of the Court. Again, of note, notwithstanding the writers' correspondence's argument to the contrary, this Court has not issued an injunction; this Court has not issued a temporary restraining order; this Court has not halted a legitimate state investigation; this Court has not

---

[35] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).
[36] *DeSpain v. Johnston*, 731 F.2d 1171 (5th Cir. 1984).
[37] *Id.* at 1178.

enjoined a state officer – in short, **only in the writers' correspondence do these wholly inapplicable, egregious scenarios exist** – they do not exist herein and to suggest otherwise by way of inappropriate argument is wholly specious, at best.  **In point of fact, this Court has issued no orders of any nature impacting any state court, whatsoever, nor has this Court utilized any judicial mechanism which might impinge in any possible fashion on any state court proceedings**; to do so absent a gross imbalance between federal and state interests, would be improper intervention or interference.  For the writers' correspondence to attempt to establish a specious argument premised on facts not at issue, and case law which is inapplicable, causes this Court serious and grave concern.

The writers' correspondence, also, cites the Anti-Injunction Act, 28 U.S.C. §2283, in an effort to bolster the hollow allegation that this Court has acted without proper respect to the notion of comity - again, the statute is wholly inapplicable as, again, no injunction is present or in any way at issue.  Again, it is without question, *any reference to an injunction exists only in the empty rhetoric and wholly unsupported and inapplicable argument of the writers' correspondence*.  This Court has not suggested, discussed or issued an injunction of any sort, nor has that possibility been mentioned anywhere, again, *except in the writers' correspondence*.  For the correspondence to attempt to create a specious argument based upon nonexistent facts and inapplicable case law, with such callous disregard for and of the actual facts and applicability of the cases is exceedingly troubling.  Further discussion of this portion of argument in the writers' correspondence is clearly unnecessary as it is wholly without merit.

The writers' correspondence contains a very disturbing characterization of the interaction between this Court and the Honorable Sarah M. Singleton's court.  Not only does the writers' correspondence mischaracterize the nature of this Court's interaction with the state court, but,

also, the writers' correspondence implies that Judge Singleton engaged in judicial misconduct by abdicating her role as a judge of the sovereign state of New Mexico.

Judge Singleton is a sitting judge in a sovereign state within the United States and, as such, is fully authorized and fully capable of making her own judicial choices and decisions and does and has done so with great honor and competence; for the writers' correspondence to imply otherwise, or to suggest Judge Singleton shirked her judicial responsibilities and abdicated those responsibilities to another court, is wholly unsupported and, again, exceedingly troubling.

This Court is not aware of what Rulings, if any, Judge Singleton might or might not have made in her case because this Court is not and was not privy to any possible Rulings or judicial action by Judge Singleton.  This Court can only note that the writers' correspondence points to no evidence or improper action on the part of Judge Singleton or this Court – **because there is none.**  The *"argument"* made in the correspondence that this Court violated the spirit of comity, which purports to be supported by wholly inapplicable case law, *i.e.* citing cases where a court had issued an injunction or temporary restraining order, or enjoined the state court or overtly interfered with state investigation is again, specious, and wholly without merit.  Rather, what the writers' correspondence seems to complain about is the legitimate exercise of comity and the showing of respect made to and with the state courts by this Court.   There cannot have been misconduct on the part of Judge Singleton, because there was none on the part of this Court, period.  The exchange of ideas, cooperation, and coordination *is* the exercise of comity within a MDL context and is not only desirable, but also essential to effective case management.

If the writers are unhappy with any decision which might or might not have been made by Judge Singleton, this Court is rather certain there exist proper avenues for appeal of any such ruling within that venue.  To submit unsolicited correspondence to this Court containing wholly

12

unsupported, completely inaccurate, incendiary allegations against this Court, and by implication against Judge Singleton, is ill conceived. The inflammatory tenor of the correspondence suggests a misguided attempt to intimidate or manipulate one or both courts; this Court and, I am rather certain, my esteemed state court colleague will not be intimidated or manipulated by unjustified, and false accusation couched within specious and hollow rhetoric.

The writers' correspondence further suggests this Court also, will shirk its duty to move this matter forward to a just, efficient, and timely conclusion. They contend that "his client will not live long enough to see his trial date." It is grossly apparent from the correspondence the writers have not met their obligations as a counsel in the MDL to keep themselves apprised of their cases in the MDL and the status of the MDL, as well as the procedures and processes established in the MDL.

This Court directs the writers to the SCHEDULING ORDER dated July 13, 2012 wherein November 3, 2014 is the target date set for the first bellwether trial in the MDL,[38] and where the target dates for the orderly progression of the MDL can be found, and notes this Court established at the outset a process for bringing "Any time sensitive threshold filings or motions.. .", *See*: First General Order - all Actions, p. 2, ¶ 5 (MDL Doc. No. 4), as well as extensive procedures for communication with the Court in non-exigent circumstances. *See:* Minute Entry: Communicating With the Court, April 13, 2012 (MDL Doc. No. 562); Minute Entry: Status Conferences, April 13, 2012 (MDL Doc. No. 563). This Court notes the writers have chosen not to avail themselves of any of the avenues established by the Court.

---

[38] Scheduling Order July 13, 2012 (MDL Doc. No. 1418) and (Member Case Doc. No. 34).

Currently, Mr. Miller has two cases in the MDL *Dunlavey v. Takeda Pharmaceuticals America, et al.*, 06:12-cv-01162 and *Ward et al. v. Eli Lilly & Co. et al*, 6:12-cv-02127, which the record reflects Mr. Branch is not co-counsel in either. However, a review of the record notes Mr. Branch is shown as counsel in multiple cases before this Court, and it is unclear without further research by this Court, whether Mr. Miller is listed as co-counsel in any one of those cases. It should be noted, the caption on the correspondence directed to this Court reflects the caption of a New Mexico case, and only the master caption for the MDL matter.

As noted, the overreaching argument of the writers' correspondence is that this "Court's actions do not give due regard to the important policy of comity."[39] As is clear, this Court vehemently disagrees and refers the writers to both the federal and state manuals for support of this Court's position and the absence of any support for the opposite position; rather, this Court has exhibited the highest regard for comity, offering open participation and great deference and respect for the state courts. Here federal and state court proceedings overlap, which calls for exactly the course of action embarked upon by this Court. The tenor of all contact among and between this Court and the state courts has been based upon mutual respect with full dignity afforded to each sovereign court given at every turn;[40] to suggest otherwise is either grossly negligent or a deliberate attempt to accuse the Court falsely. One need only harken to the Court's introduction and background provided herein to appreciate the true nature of comity and the degree to which this Court has acted in promotion of comity - false accusation found within the correspondence, not to the contrary.

---

[39] Writers' Letter at 2.
[40] *See supra* note 6 (Letter to State Court Judges).

The writers' correspondence, also, accuses this Court of "impeding" the state court's exercise of judicial authority by "ex parte communication" with the state court trial judge,[41] and again, argues "the Court's communications with the New Mexico state court judge did not reflect due regard for the concept of comity."[42]   To argue an exercise of judicial respect and comity is to violate comity and "impede" any given state proceeding(s), as the writers' correspondence infers, is so inaccurate as to border on the absurd.   It goes without question, as noted earlier, the advantages of action which promotes cooperation, coordination and interaction with all the involved state courts where there are overlapping multiple state court and federal court jurisdictions, are well documented, well established, and a wholly *positive promotion* of - *not an impediment to* - comity and the state court.   The writers' correspondence's weak attempt to argue otherwise is again, factually and legally inaccurate, and indeed, specious and thus, is worthy of no further discussion.

The writers' correspondence, however, again erroneously characterizes the clearly encouraged discussion between and among courts as improper "ex parte conversations" - *i.e.* conversation *by one party with the Court to the exclusion of all others*.   The correspondence, again, reaches to both legally inapplicable and factually inaccurate argument when it suggests wholly appropriate communication among and between courts is or could be deemed inappropriate "ex parte communication."   Neither court is a party to either case or cases.   The correspondence, again, attempts to mischaracterize and misstate an otherwise applicable legal principle in an attempt to prostitute that otherwise valid legal principle.   This Court reminds the writers of the guidance provided in *Managing Multidistrict Litigation in Products Liability*

---

[41] Writers' Letter at 4.
[42] *Id.*

*Cases* at part 6, which recommend the transferee judges "reach out to your state court colleagues from the outset... [and] forge constructive working relationships with them,"  and the State Manual at page 31, which states "[i]f the federal cases already have been assigned to a coordinating judge, whether of [sic] not he or she is in your jurisdiction you should contact the judge to advise him or her that you are handling some of these cases and *to learn what coordination is underway and possible,*" as well as the plethora of jurisprudence embracing the recommended coordination of interaction.[43] (emphasis added)   The Court notes the correspondence is wholly silent as to this point, rather, the correspondence attempts to prostitute the concept of ex parte interaction in order to support the specious premise suggested and thereafter, erroneously and inaccurately quotes from *In re Palmisano*.[44]  First, this Court notes the quote contained in the correspondence is itself incomplete and inaccurate.  The correct quote from *In re Palmisano* is as follows, "[f]ederal courts, no less than state courts, forbid ex parte contacts **and false accusations that bring the judicial system into disrepute;**"[45] (emphasis added)  the writers' quote significantly omits the admonition against false accusations "that bring the judicial system into disrepute" and the omission is of note.  The omitted portion significantly contains the admonition against making false accusations against a court – an admonition not without possible application and relevance herein.  Second, the Court notes the facts in the case cited within the correspondence by the writers to support the fallacious argument are in no way applicable, unless one looks to the writers' present correspondence and their obligations as an officer of the court.  In *In re Palmisano* an attorney was disbarred following an evidentiary

---

[43] *See supra* note *13.*
[44] Writers' Letter at 5 (quoting *In re Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995)).
[45] *In re Palmisano*, 70 F.3d 483, 487 (7th Cir. 1995).

hearing in state court *where Palmisano admitted to making accusations against several state judges in Illinois without any factual bases.*[46]   A case the writers might be well advised to consider as a cautionary tale.

Next, the correspondence openly accuses this Court and by implication the *state court* of engaging in "a breach of legal and judicial ethics."[47]   In making this accusation, the writers' correspondence not only accuses this Court, but also, by implication, the Honorable Sarah M. Singleton of engaging in behavior that constitutes a breach of judicial ethics.   The correspondence alleges that the interaction between this Court and the *state court* somehow "undermines confidence in the impartiality of the court,"[48] thus, arguing by implication, Judge Singleton, this Court, or both, were somehow inappropriately impartial in some unidentified judicial determination, as a result of "ex parte" conversations.   Again, it is so clear as to be without question, this Court cannot and did not appear on behalf of any one of the parties within a state court proceeding, nor did Judge Singleton so appear in the MDL.   Thus, there was no, nor could there have been, an "ex parte communication" by this Court with the New Mexico Court, and, again, communication between and among courts in mass tort and overlapping jurisdiction cases is not only *not* ex parte, but appropriate.[49]   Additionally, the correspondence identifies no

---

[46] *Id.*

[47] Writers' Letter at 5 (emphasis added).

[48] *Id.*

[49]MANUAL FOR COMPLEX LITIGATION (Fourth) (2004); TEN STEPS TO BETTER CASE MANAGEMENT: A GUIDE FOR MULTIDISTRICT LITIGATION TRANSFEREE JUDGES (2009); MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES (2011); MANUAL FOR COOPERATION BETWEEN STATE AND FEDERAL COURTS (1997).   *In re Aircrash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1009 (5th Cir. 1977); *Coburn v. 4-R Corp.*, 77 F.R.D. 43 (E.D. Ky. 1977); *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 476 F.Supp. 445 (J.P.M.L. 1979); *In re Fed. Skywalk Cases*, 93 F.R.D. 415 (W.D. Mo.), *vacated*, 680 F.2d 1175 (8th Cir.), *cert. denied*, 459 U.S. 988 (1982); *In re Ohio Asbestos Litig.*, No. 83-OAL (N.D. Ohio June 1, 1983); *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 917 (D. Nev. 1983); *In re Technical Equities Fed. Sec. Litig.*, [1988-1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) 94,093 (N.D. Cal. 1988); *In re L'Ambiance Plaza Litig.*, No. B-87-290 (WWE) (D. Conn. & Conn. Super. Ct. Dec. 1, 1988) (Special Settlement Proceedings).

judicial action or ruling by either court reflecting a lack of impartiality.  Again, the argument is wholly specious; the facts are nonexistent, and the legal argument is, again, prostituted.  The matter warrants no further discussion.

This Court has very gave concern as to the unsupported, unsubstantiated and wholly false accusations made against not only this Court, but, also, if only by implication, against Judge Singleton and her Court within the noted correspondence.  Again, this Court is not aware of what Rulings, if any, Judge Singleton might or might not have made in her case because this Court, as noted above, is not and was not privy to any possible Rulings or judicial action by Judge Singleton.   Again, the writers might be well advised to consider the quite grave possible consequences of engaging in such incendiary, accusatory conduct and look to the very case they cited as illustrative of the gravity of such ill advised rhetoric.

Overall, the writers' correspondence argues this Court violated principles of comity as it sought to "interfere" with, or "impede" the state court's decision-making process – it did not, nor could it, thus, the writers' correspondence contains no factual or jurisprudential support for the argument, – as, again, there is none – to the contrary, there is a plethora of case law in opposite to his argument, and an absence of factual evidence to support the argument.  Perhaps most troubling is the argument which suggests state court judges, and in particular Judge Singleton, is subject to and susceptible to such improper interference or impediment by federal district court judges – they are not, and Judge Singleton was not.  This Court would insult any state court judge were this Court to attempt to dictate how that judge should or should not handle his or her cases; to suggest otherwise insults both the state and federal court.

In short, the writers' correspondence puts forth a wholly specious argument that distorts the law, misstates the facts, is fallacious on its face and can be read to suggest the thinly veiled threat accompanying false accusation, which could be interpreted as an attempt to intimidate or manipulate the involved courts.   Not only does the correspondence suggest injunctions, temporary restraining orders, and interference with legitimate state investigations where there are none and cite cases which are wholly inapplicable, and contain no evidence of fact to support the argument, it is overtly selective in its presentation.  The material included illustrates selective cherry picking from the sources and cases which are cited and pulls language out of context and quotes incompletely, and often incorrectly, and then misapplies the entirety to attempt to support a fabricated argument.  Perhaps the most glaring example of selective rhetoric is the cite within the correspondence to an inapplicable portion of the Manual to support the argument that in MDL cases a judge should not reach out to cooperate with state court judges, while wholly disregarding the applicable Sections 20.3, 20.31,[50] which clearly encourage such interaction and thus, contradict the argument made, as well as the argument that to reach out is a violation of comity and unwelcome interference, in total disregard of the State Manual endorsing exactly such interaction.  The correspondence, also, wholly, ignores the plethora of sources which are in complete contradiction to his argument, such as the *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges*, the *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges*, as well as the long jurisprudential history

---

[50] MANUAL FOR COMPLEX LITIGATION (Fourth) (2004), p. 229.

embracing cooperation and coordination in and among the involved courts in the context of MDL and mass tort litigation.[51]

The writers' correspondence next turns to Canon 3A (4) of the Code of Judicial Conduct for United States Judges.  Canon 3A (4), as with each and every other legal source cited within the correspondence, is inaccurately and/or incompletely quoted and wholly inapplicable to the situation – it simply does not apply.  The commentary on Canon 3A(4), and as has already been noted, all guidance and jurisprudential history is clear, cooperation and coordination between and among state and federal courts within the context of multidistrict litigations is not inappropriate, rather is applauded, and specifically encouraged by both the state courts through their *Managing Mass Tort Cases: A Resource Book for State Trial Court Judges*[52] and the federal courts through their *Manual for Complex Litigation, Fourth*.   The commentary accompanying Canon 3A(4) specifically states, "[Canon 3A(4)] does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities."   This prong of argument of the correspondence, again, is so spurious as to deserve no further attention.

The writers' correspondence, also, complains of a lack of notice and a lack of right to be heard - arguments, again, equally hollow.  At no point and in no manner do the writers point to any jurisprudence, judicial guidance, or scholarly argument that it would be appropriate, much less required, for sovereign courts to clear their adjudicative actions with a party litigant or counsel for a party litigant – as none exists.  Additionally, all counsel within the MDL are

---

[51]MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES 22 (2011).
[52]*See supra* note 11.

afforded, by the process put in place by this Court's orders, full opportunity to be heard.  The writers' unsolicited July 27, 2012 correspondence, although, clearly illustrates a total disregard of those processes, procedures and available avenues for interaction with the Court.  The correspondence was submitted unsolicited, wholly outside this Court's orders and the Federal Rules of Civil Procedure, and in total contravention to the extensive system set in place by this Court within the MDL for orderly and full interaction with the Court and among parties.  The manner selected was completely outside proper and available avenue, did not provide proper opportunity for the defendant to properly respond or be heard, and exhibited an alarming disregard for the rules which apply to all.  Extensive and multilayered processes have been instituted for interaction with the Court and among parties in order to afford due process to all and the right for all, movant and opponent, to be fully heard in an equitable and orderly fashion – the correspondence exhibited a blatant disregard of those due process safeguards and processes, as well as the specific procedures and avenues established by this Court's orders issued within the MDL.  The correspondence, it would seem, is a clear attempt to set oneself apart from and above the rules that apply to all other parties and counsel within the MDL, and to circumvent the orderly processes and avenues established by the Court for orderly and equitable hearing before the Court in a case as complex and large as this.  In short, the manner selected bespeaks a belief that the rules do not apply to the writer.

Lastly, the correspondence alleges a lack of notice.  Since the outset of the MDL, this Court has made it known its intention to reach out to the state courts and explore possible interaction.  By Order dated April 13, 2012, this Court appointed the Plaintiff's Steering committee upon which Ms. Dawn Barrios was appointed as *Liaison Counsel to State Courts* and

thereafter, added defense counsel Ms. Sherry Knutson to that endeavor. Each monthly status conference, save one, has included a general update as to state court status. The initial status conference, at which all counsel were required to attend personally, and at all subsequent working meetings thereafter, discussion and suggestion by counsel as to how and when and of what nature that interaction should be has ensued. This Court's records show Mr. Miller was not in attendance at the initial organizational meeting where extensive discussion was had and suggestion given and received as to possible interaction with the state courts, however, the record reflects a member of Branch's firm was present at the initial status conference. Each attorney who comes into the MDL has the obligation to become and remain abreast of the status and progress of the case. In order to facilitate that ethical obligation, liaison counsel was appointed, and each attorney is assigned a specific member of the Plaintiffs' Steering Committee who is charged with answering inquiries and keeping counsel appraised. Additionally, notice and relevant information is, also, given by the Special Master to each "tag along" as that case comes into the MDL, and notice can be found on the Court's website, which the Court has had since the outset, – a fully operational, user friendly website where all orders and relevant information are posted. Notice of this Court's intent to interact with the state courts has been known and discussed from the outset; permission for that interaction from any given counsel is not required, nor would it be appropriate.

The correspondence sent to this Court was unsolicited, inflammatory, inaccurate and did not allow for proper response from or notice to the defendants. It totally disregarded the system put into place outlining the manner for proper interaction with the Court, and did not comply with any order(s) of this Court or the Federal Rules of Civil Procedure. This Court will not

allow one counsel to deliberately step outside the existing avenues for proper interaction with the Court and thus, circumvent the rules which apply to all and are designed to allow for orderly and equitable interaction among parties and with the Court and a case of this scope and magnitude. This Court cannot, of course, speak for the Honorable Sarah M. Singleton, but suggests such conduct would not be well received before that court as well.

In closing, this Court has concern that given the improper manner selected to communicate with the Court, the unsupported, inaccurate, inapplicable, incendiary, hollow rhetoric contained within the correspondence, and the specious nature of the argument itself, that the correspondence could be read as a thinly veiled attempt to intimidate or manipulate this Court as well as the state court. Again, this Court cannot, of course, speak for my esteemed state court colleague, however, this Court will be neither intimidated nor manipulated by such, and suggests the writers would be well advised to give considered and contemplative thought before engaging in any such ill advised action in the future. This Court reminds the writers of their responsibilities and obligations owed as an officer of the court and the writers should stand on notice that to engage in such ill advised conduct in the future will risk appropriate action by this Court.[53] Further, Messrs. Miller and Branch should stand on notice that this Court will accept no unsolicited communication from either. The writers are on notice there are procedures and rules for individuals who wish to communicate with the Court and those rules and procedures apply equally to all counsel - Messrs. Miller and Branch included. This Court directs the writers to the

---

[53] *See*: The Louisiana Rules of Professional Conduct, Rule 8.2: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or a candidate for election or appointment to judicial or legal office."; Rule 8.5: "A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction."

orders of this Court and to the Federal Rules of Civil Procedure and again reiterates the rule and procedures exist to allow for equitable, non ex parte hearing and orderly administration and they apply to all.   Again, it is this Court's fervent hope it was not counsels' intention for their correspondence to be read as making false and unsupported accusations of misconduct against this Court or Judge Singleton's court, or an attempt to intimidate or manipulate either court, rather this Court will grant the writers the benefit of the doubt, at this juncture, and assume the correspondence was an ill conceived, over zealous, poorly thought out engagement in regrettable hyperbole and empty rhetoric, and as such, and acting within that hope, this Court will take no further action as to the correspondence at this time and trusts the writers will be more circumspect in the future.

Lafayette, Louisiana, this __23__ day of __August__, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

24